IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | Case No. 14-20143-CM |
| **KEITH COUNTESS, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

The government charges defendants with a number of crimes arising out of the alleged employment of undocumented aliens. Generally, the government claims that defendants used a shell company so that they could pay undocumented aliens with cash. One defendant is a drywall subcontractor. The subcontractor allegedly used a financial intermediary to pay drywall construction crews comprised primarily of undocumented alien workers. As the government alleges the scheme, the subcontractor would pay the intermediary by check. The intermediary used bank accounts to cash the check, then gave cash to crew managers to pass on to the undocumented alien workers. Based on these activities, the government charged defendants with various crimes, including money laundering and bank fraud (and conspiracy to commit both).

The case is before the court on six motions: three motions to dismiss the money laundering counts (Docs. 65, 73, and 83) and three motions to dismiss the bank fraud counts (Docs. 66, 70, and 84). The court heard argument on these motions on September 30, 2015, and took the motions under advisement. The court is now prepared to rule.

The court may decide to dismiss charges in an indictment before trial when "'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the

validity of the defense.'" *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)).  At this stage, the court reviews the indictment solely for the sufficiency of its charges—disregarding the strengths and weaknesses of the government's case. *United States v. Ailsworth*, 873 F. Supp. 1450, 1460 (D. Kan. 1994) (citations omitted); *see also United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) ("On a motion to dismiss an indictment, the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense.") (internal citations omitted).  Generally, an indictment is sufficient if it (1) identifies the elements of the charged offense(s), (2) gives the defendant fair notice of the charges, and (3) enables the defendant to assert a double jeopardy defense.  *United States v. Blechman*, 782 F. Supp. 2d 1238, 1244 (D. Kan. 2011) (internal citations and quotation marks omitted).  The court must not look to see whether substantial evidence supports an indictment.  *Ailsworth*, 873 F. Supp. at 1460 (citing *Costello v. United States*, 350 U.S. 359, 363 (1956)).  "An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Id*. (quoting *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994)).

## **Money Laundering Counts**

The government charges that defendants laundered money and conspired to launder money under 18 U.S.C. § 1956(a)(1)(B)(i), which provides:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.  For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions,

any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

§ 1956(a)(1)(B)(i).  Further, the statute specifies that "the term 'proceeds' means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity."  *Id.* § 1956(c)(9).

Defendants move to dismiss the money laundering counts for several reasons: (1) the financial transactions did not involve the proceeds of unlawful activity because Counts One through Nine[1] are not crimes; (2) the financial transactions did not involve the proceeds of unlawful activity because the money was for drywall installation—not for encouraging aliens to illegally reside in the United States; and (3) the defendants did not conduct the financial transactions to disguise the nature, location, source, ownership, or control of the proceeds of unlawful activity.  To the contrary, defendants argue, Jose Torres (the party who cashed the checks) openly conducted business and used bank accounts.

The court already essentially rejected defendants' first argument when it denied the motions to dismiss Counts One through Nine at the September 30 hearing.  As for defendants' second argument, they rely on *United States v. Jorge Delgado-Ovalle*, No. 13-20033-07-KHV, 2013 WL 6858499 (D. Kan. Dec. 30, 2013), where Judge Marten dismissed money laundering counts because the proceeds were from the sale of houses—not from the encouragement of aliens to illegally reside in the United States.  Specifically, Judge Marten noted:

> Section 1956(a)(1)(B)(i) requires the money to be "proceeds of specified unlawful activity," and § 1956(c)(9) requires the proceeds to be obtained through unlawful activity.  Building and selling houses is not an unlawful activity, and the government cites no authority for the proposition that the sale of a house turns into a money laundering venture if it was constructed with the help of persons not lawfully present in the United States.

---

[1] The court denied defendants' motions to dismiss Counts One through Nine at the hearing on September 30, 2015.  These counts charged that defendants encouraged or induced undocumented aliens to reside in the United States for commercial advantage or private financial gain (and conspired to do so).

-3-

*Delgado-Ovalle*, 2013 WL 6858499, at *8.  Here, defendants argue that the proceeds that defendants Plaster Masters, L.C. ("Plaster Masters") and Keith L. Countess used to pay Jose Torres (and that Torres then passed on to the crew) were from drywall installation—which is a legal activity.  The government counters that defendants made money by hiring undocumented workers; specifically, by "encouraging" undocumented individuals to reside in the United States.  In other words, it was the employment of undocumented alien workers to install drywall that made the money ("proceeds") defendants then used to pay the workers.

The court has reviewed the *Delgado-Ovalle* opinion.  The government claims the opinion is distinguishable, but the court has trouble ascertaining how *Delgado-Ovalle* materially differs from the case at hand.  In fact, the allegations are nearly the same.  The court finds Judge Marten's reasoning persuasive, as well as the reasoning in *United States v. Maali*, 358 F. Supp. 2d 1154 (M.D. Fla. 2004).  In *Maali*, the government argued that saving money by utilizing undocumented workers equated to illegally obtaining the money for purposes of the money laundering statute.  358 F. Supp. 2d at 1159.  The *Maali* court disagreed, stating:

> Having ascertained the plain and ordinary definition of "proceeds," it is clear that the term does not contemplate profits or revenue indirectly derived from labor or from the failure to remit taxes.  While it is natural and clearly correct to say that Defendants received "proceeds" from the sale of jeans, it is, by contrast, both causally tenuous and decidedly unnatural to say that the moneys one has received from the sale of a good are, not the "proceeds" from the sale of a good, but "proceeds" of the labor used to produce the good.  It is in accordance with this reasoning that Defendants' motion for acquittal has been granted.

*Id.* at 1160.

Here, the indictment alleges that defendants made money by hiring undocumented workers.  They then laundered that money by issuing checks to Jose Torres, who cashed the checks and paid the workers.  This is not, as the government calls it, a "classic money laundering scheme."  Rather, the money that defendants are accused of illegally "washing" through the bank originates from a legitimate

source—from drywall installation; not from the labor used for the installation.  Without the proceeds being from illegal activity, the government cannot prevail on its charges.

Because the court accepts defendants' second argument, the court need not address defendants' third argument.  Counts Ten through Twenty are dismissed.

### **Bank Fraud Counts**

Defendants next request that the court dismiss the bank fraud counts.  In support of their motion, defendants argue that the object of the alleged scheme was not to obtain bank property; it was to facilitate the use of cheap labor using undocumented aliens to maximize the financial benefits to the defendants.  Defendants submit that the alleged conspiracy to establish bank accounts in the name of Jose K. Torres Drywall was not to defraud the bank, regardless of whether Torres was actually in the drywall installation business.

The government alleges that defendants obtained money from Bank of America and Wells Fargo Bank by cashing Plaster Masters's checks—thereby obtaining monies and funds under the custody and control of a financial institution by means of false and fraudulent pretenses and representations.  The fraudulent representations, according to the government, occurred when Torres represented to the banks that the company was a drywall business.  Had the banks known that it was instead a shell company for paying illegal workers, the government maintains that the banks would not have conducted business with the company.

Application of the government's theory would expand the reach of the bank fraud statute beyond its scope.  The indictment alleges, "The object of the conspiracy was to facilitate the use of cheap labor using undocumented aliens to maximize the financial benefits to the defendant."  (Doc. 1 at 43.)  The indictment further alleges that, in carrying out this conspiracy, "the defendants obtained monies and funds under the custody and control of a financial institution by means of false and

fraudulent pretenses, representations, and promises." (*Id.*)  But *Loughrin v. United States* observed that the object of the scheme to defraud must be to obtain bank property.  134 S. Ct. 2384, 2397 (2014) ("The statute requires only that the objective of the scheme must be the obtaining of bank property . . . .").  The purpose here, as stated in the indictment, was not to obtain bank property.  Instead, the purpose was to facilitate the use of cheap labor.  And importantly, the checks cashed at the banks were not fraudulent—they were backed by Plaster Masters's and Countess's own funds.

The court concludes that the government's allegations are insufficient to support the charges of bank fraud.  The bank fraud counts (Counts Twenty-One through Thirty-One) are dismissed.

**IT IS THEREFORE ORDERED** that the motions to dismiss the money laundering counts (Docs. 65, 73, and 83) are granted.

**IT IS FURTHER ORDERED** that the motions to dismiss the bank fraud counts (Docs. 66, 70, and 84) are granted.

Dated this 6th day of November, 2015, at Kansas City, Kansas.

                                          **s/ Carlos Murguia**
                                          **CARLOS MURGUIA**
                                          **United States District Judge**